1
2
3
4
5
6
7
8
9
10
11
12

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

KAYLEEN SHAKESPEAR,                     )
                                        )
                          Plaintiff,    )      Case No. 2:12-cv-01064-MMD-PAL
                                        )
vs.                                     )      **ORDER**
                                        )
WAL-MART STORES, INC.,                  )
                                        )      (Mot. to Exclude Evidence - Dkt. #56)
                          Defendant.    )
_____)

13      Before the court is Defendant Wal-Mart Stores, Inc.'s Motion to Exclude all Evidence

14  Regarding Plaintiff Kayleen Shakespear's Future Surgery, Permanent Medical Impairment, and Future

15  Medical Expenses Pursuant to FRCP 37(c)(1) and FRCP 37(b)(2) [Emergency Motion] (Dkt. #56). The

16  court has considered the Motion, Plaintiff's Opposition (Dkt. #60), Wal-Mart's Reply (Dkt. #64), and

17  the arguments of counsel at the hearing held on April 9, 2013. Christian Smith appeared on behalf of

18  the Plaintiff, and Brenda Entzminger appeared on behalf of the Defendant.

19                                      **BACKGROUND**

20      The complaint in this case was filed in state court and removed (Dkt. #1) June 1, 2012. It

21  asserts claims against Wal-Mart related to a slip-and-fall accident Plaintiff allegedly suffered at a Wal-

22  Mart store in Las Vegas, Nevada on August 5, 2011. Shakespeare contends she slipped and fell on a

23  cherry pit and was injured. The complaint alleges Wal-Mart should have known about the cherry pit

24  and created an unreasonably dangerous condition by failing to exercise due care in maintaining a clear

25  floor. *See* Complaint, attached to Petition for Removal, (Dkt. #1) as Exhibit "B". The court entered a

26  Scheduling Order (Dkt. #9) on August 8, 2012.

27      Discovery in this case has been contentious. The parties have been unable to agree on routine

28  scheduling and case management matters, and have had multiple discovery disputes which the court has

resolved in a series of status and dispute resolution hearings. *See, e.g.,* Minutes of Proceedings (Dkt. ##14, 21, 27, 29 and 65).

## DISCUSSION

**I.   The Parties' Positions.**

    **A.   Wal-Mart's Motion to Exclude.**

On February 21, 2013, the deadline for disclosing experts, Plaintiff disclosed the reports of two medical expert witnesses who opine Plaintiff will need knee replacement surgery and incur future medical expenses exceeding $228,000. Wal-Mart was extremely surprised by this disclosure because throughout the litigation, Plaintiff's counsel has affirmatively represented that Plaintiff had ceased medical treatment related to this matter, and affirmatively represented that Plaintiff was not bringing a wage loss claim. Neither Plaintiff's initial disclosures, nor four subsequent supplements identified future medical expenses or wage loss. The parties stipulated to a discovery plan and scheduling order which required Plaintiff to submit to an independent medical examination ("IME") if Wal-Mart discovered that Plaintiff was continuing medical treatment associated with this incident, or if Wal-Mart discovered that Plaintiff was claiming future medical expenses. Because Plaintiff did not make the disclosures until the last day of the expert disclosure deadline, Wal-Mart did not have an opportunity to demand an IME.

On the last date for disclosing expert witnesses, Plaintiff disclosed a 51-page report from one of two retained medical experts, Dr. Armando Miciano, which indicates Plaintiff began treatment with him on August 5, 2012, six months prior to the disclosure deadline. Plaintiff also disclosed another retained medical expert, Dr. Hugh Selznick, who reported, for the first time, his estimate of Plaintiff's future medical expenses and treatment recommendations. Dr. Selznick's report indicates that he began treating Plaintiff six months prior to the disclosure deadline and had rendered his future treatment recommendations well before the Plaintiff disclosed this information to Wal-Mart. Under these circumstances, Wal-Mart argues Plaintiff's failure to timely disclose her treatment with these two physicians and their recommendations concerning future treatment and projected future medical expenses should result in excluding this evidence at trial. Wal-Mart also argues that Plaintiff's failure to disclose this information prior to the expert disclosure deadline violated Plaintiff's obligations under

Rule 26(a)(1)(A)(iii), prevented Wal-Mart from conducting an IME, and prevented Wal-Mart from disclosing an expert witness before the expert witness disclosure deadline.

Counsel for Wal-Mart states that she originally gave counsel for Plaintiff the benefit of the doubt, and offered to stipulate to a plan to avoid any prejudice. Specifically, Wal-Mart offered to stipulate to an extension to allow it to disclose a medical expert after Wal-Mart obtained an IME based on Plaintiff's late disclosures. However, counsel for Plaintiff refused to agree to either a court-ordered IME or to extend the deadline to allow Wal-Mart to designate an expert to address the previously undisclosed treatment and projected future medical expenses. Counsel for Wal-Mart therefore concluded that Plaintiff's late disclosures were calculated to deny Wal-Mart the opportunity to obtain an IME and disclose its own expert to Wal-Mart's prejudice.

## B. Plaintiff's Response.

Plaintiff opposes the motion acknowledging that on July 27, 2012, counsel responded to Wal-Mart's inquiry and advised opposing counsel that the Plaintiff was not making a wage loss claim. Counsel for Plaintiff also acknowledges that in the same letter, he advised opposing counsel that the Plaintiff was still experiencing some problems with her right knee, but was not actively treating. Plaintiff was deposed October 4, 2012. During her deposition, she testified that she was still treating with Dr. Ram, her family physician, for right knee complaints, and that Dr. Ram had been prescribing Percocet. She also testified that Dr. Ram had not released her from care, and that her right knee pain sometimes interferes with her activities of daily living.

Plaintiff retained Hugh Selznick, M.D., and Armando Miciano, M.D., as her medical experts before the initial October 21, 2012, expert disclosure deadline. That deadline was extended until February 21, 2013. Counsel for Plaintiff explains that these experts were retained to conduct IMEs, to assess causation of injury, reasonableness and appropriateness of past medical care, reasonableness and appropriateness of past medical expenses, whether any future medical care would be needed, and the permanency, if any, of the Plaintiff's injuries. Dr. Selznick conducted his IME September 5, 2012. However, he did not finalize his opinions or finalize his report until February 4, 2013.

Dr. Miciano performed his IMEs of the Plaintiff on August 5, 2012, and August 22, 2012, but did not finalize his opinions or evaluations until February 14, 2013, the date he provided his report to

3

counsel for Plaintiff. Plaintiff argues that Wal-Mart did not request an IME of the Plaintiff prior to the initial expert deadline despite being on notice that Plaintiff was still experiencing intermittent right knee pain and was under the care of Dr. Ram. Wal-Mart also did not identify any medical experts on the February 21, 2013, deadline to designate initial experts. Under these circumstances, counsel for Plaintiff argues that her disclosure of future medical care opinions was timely under Rule 26. Counsel also argues that the applicable expert deadline was February 21, 2013, and that Plaintiff complied with his deadline by producing her initial expert reports because this was the first time that this information became "reasonably available." If the court disagrees and "sides with Wal-Mart's position" this would circumvent and make obsolete the expert disclosure deadlines required by Rule 26(a)(2). Alternatively, counsel for Plaintiff argues that, if the court finds Plaintiff's future medical damages computation is untimely, the failure to timely disclose was substantially justified or harmless. Plaintiff also argues that Wal-Mart has not been prejudiced by any late disclosure because it was on notice of the potential for future medical damages and can offer rebuttal opinions. Additionally, there will be no disruption in the trial date as a trial date had not yet been set.

## C.   Wal-Mart's Reply.

The reply reiterates arguments that the court should exclude all evidence regarding the Plaintiff's proposed future surgery, permanent medical impairment, and future medical expenses under Rule 37(c)(1) and Rule 37(b)(2) because Plaintiff failed to comply with this court's August 8, 2012, Discovery Plan and Scheduling Order (Dkt. #9). Wal-Mart maintains that Plaintiff's opposition does not offer any factual or legal authority to dispute that she violated Rule 26(a)(1)(A)(i), Rule 26(a)(1)(A)(ii), Rule 26(a)(1)(A)(iii), Rule 33, and Rule 26(e) by failing to timely disclose future medical expenses in her computation of damages, and the possibility of future knee replacement surgery. Plaintiff also inaccurately responded to Wal-Mart's Interrogatory Nos. 14, 15 and 16 which specifically sought information pertaining to any allegations of permanent impairment, future medical procedures recommended, future medical expenses claimed, and physicians supporting these contentions. She likewise failed to timely supplement her interrogatory responses upon learning they were inaccurate or incomplete. Wal-Mart disputes that the opinions of the two experts were not reasonably available until the last date of the expert disclosure deadline given that both experts

4

1  examined the Plaintiff as early as August 2012. If Plaintiff's "reasonably available" arguments were
2  accepted by the court, no party would face exclusion sanctions for untimely disclosure under Rule
3  37(c).

4         Counsel for Wal-Mart strenuously maintains that, based on its supporting exhibits, that Plaintiff
5  did not merely forget or neglect to ask for information from its experts in a timely manner. Rather,
6  Wal-Mart believes Plaintiff purposefully withheld the information to prevent Wal-Mart from obtaining
7  an IME early in the case and to prevent Wal-Mart from retaining its own medical expert for its case in
8  chief. Wal-Mart also points out that Plaintiff stipulated, and the court ordered, that Wal-Mart would
9  have an opportunity to conduct an IME under one of two circumstances: 1) if Plaintiff was undergoing
10 medical treatment for injuries alleged from this incident; or 2) if she claimed to have residual medical
11 issues requiring additional medical treatment. Wal-Mart accuses opposing counsel of falsely
12 representing that Plaintiff was no longer treating for the purpose of depriving Wal-Mart of an
13 opportunity to conduct an IME, or to retain an expert for its case in chief. Finally, Wal-Mart contends
14 that it will be irreparably harmed by the evidence Plaintiff withheld until the expert disclosure deadline,
15 and harmed by any extension needed to remedy Plaintiff's late disclosures. Under these circumstances,
16 Wal-Mart argues that exclusion of the withheld information is the only appropriate sanction.

17 **II.    Applicable Law and Analysis.**

18        Fed. R. Civ. P. 37 authorizes sanctions for a party's failure to make disclosures or cooperate in
19 discovery. Rule 37(c)(1) provides, in relevant part:

20                 A party that without substantial justification fails to disclose information
                   required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery
21                 as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted
                   to use as evidence at a trial, at a hearing, or on a motion any witness or
22                 information not so disclosed.

23 Fed. R. Civ. P. 37(c)(1). Rule 37 "gives teeth" to the disclosure requirements of Rule 26 by forbidding
24 the use at trial of any information that is not properly disclosed. *Goodman* v. Staples The Office
25 Superstore, 644 F.3d 817, 827 (9th Cr. 2011). Rule 37(c)(1) is a "self-executing, automatic" sanction
26 designed to provide a strong inducement for disclosure. *Id.* Rule 37(a)(3) explicitly provides that an
27 evasive or incomplete disclosure, answer, or response to a discovery obligation "is to be treated as a
28 failure to disclose, answer, or respond." *Id.*

1    In the Ninth Circuit, "[t]he district court is given broad discretion in supervising the pretrial

2    phase of litigation . . . ." *Continental Lab.*, 195 F.R.D. at 677 (*quoting Miller v. Safeco Title Ins. Co.*,

3    758 F.2d 364, 369 (9th Cir. 1985)). If full compliance with Rule 26(a) is not made, Rule 37(c)(1)

4    mandates some sanction, "the degree and severity of which are within the discretion of the trial judge."

5    *Keener v. United States*, 181 F.R.D. 639, 641 (D. Mont. 1998). The Ninth Circuit reviews a district

6    court's decision to sanction for a violation of the discovery rules for abuse of discretion which gives

7    "particularly wide latitude to a district court's discretion to issue sanctions under Rule 37(c)(1)." *Yeti*

8    *by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (*citing Ortiz-Lopez v. Sociedad Espanola*

9    *de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001)). The burden is on

10   the party facing discovery sanctions under Rule 37(c)(1) to prove harmlessness. *Id.* at 1107. Exclusion

11   of an expert's testimony for failure to comply with the requirements of Rule 26(a) is a sanction

12   available to the trial court within its wide discretion under Rule 37(c)(1) even in the absence of showing

13   a bad faith or willfulness. *Id.* at 1106.

14       The district court also has discretion to exclude expert witnesses who have not been timely

15   disclosed in compliance with the court's scheduling order. *Wong v. Regents of the University of*

16   *California*, 410 F.3d 1052, 1062 (9th Cir. 2005). As the Ninth Circuit recognizes, courts enter

17   scheduling orders "to permit the court and the parties to deal with cases in a thorough and orderly

18   manner, and they must be allowed to enforce them, unless there are good reasons not to." *Id.*

19   Therefore, when a party fails to identify expert witnesses, and provide the disclosures required by Rule

20   26(a)(2) in accordance with the court's scheduling order, "[d]isruption to the schedule of the court and

21   other parties in that manner is not harmless." *Id.*

22       Plaintiff was required, pursuant to Fed. R. Civ. P. 26(a)(1)(A) to provide a computation for each

23   category of her damages claimed without awaiting a formal discovery request. Plaintiff was also

24   required to supplement or correct any disclosures or response in a timely manner if she learned that in

25   some material respect her disclosures were incomplete or incorrect. *See* Fed. R. Civ. P. 26(e)(1)(A).

26   Plaintiff served initial disclosures in this case on July 24, 2012. The initial disclosures are attached as

27   Exhibit "A" to Wal-Mart's motion. Motion (Dkt. #56) Exhibit "A". Under the category of Future

28   Medical Expenses, she stated "to be determined." Under the category of Experts Retained or Specially

Employed to Provide Expert Testimony, she responded "none at this time." Plaintiff served supplemental disclosures on August 14, 2012, September 27, 2012, December 21, 2012, and February 14, 2013. *Id.,* Exhibits "B" through "E". In each of these supplemental disclosures, the Plaintiff provided identical responses that her future damages were "to be determined" and that she had not retained or specially employed experts to provide expert testimony.

Dr. Selznick's report indicates that he first examined the Plaintiff on September 9, 2012. Reply (Dkt. #64) Exhibit "A". Counsel for Plaintiff refers to Dr. Selznick's examination as an IME. Counsel for Plaintiff referred the Plaintiff to Dr. Miciano for an independent medical examination, life care plan, and permanent medical impairment report on August 1, 2012. *Id.,* Exhibit "B", Intake Form. Dr. Miciano examined the Plaintiff in what counsel for Plaintiff describes as two IMEs on August 5, 2012, and August 22, 2012. Dr. Selznick's report was dated February 4, 2013. Dr. Miciano's report is dated February 14, 2013. Yet Plaintiff served a Fourth Supplemental Disclosure February 14, 2013, still claiming he had not retained any expert. Counsel for Plaintiff signed these discovery responses and supplemental disclosures. By signing these disclosures and discovery responses, counsel for Plaintiff certified that to the best of his knowledge, information and belief formed after reasonable inquiry, the disclosure was "complete and correct as of the time it was made." *See* Fed. R. Civ. P. 26(g). Clearly, these disclosures were not complete and correct as of the time made.

On July 27, 2012, counsel for Plaintiff sent counsel for Wal-Mart a letter indicating his client "is still experiencing some residual issues from her accident-related injuries; however, she is not actively treating at this time." Motion (Dkt. #56) Exhibit "F". Counsel for Wal-Mart sent a letter to counsel for Plaintiff July 30, 2012, confirming matters discussed at the Rule 26(f) conference and in recent communications confirming Wal-Mart's understanding that, while the Plaintiff "avers to experience some residual issues with her right knee, she has not received any additional treatment for her right knee since 2011" and that Plaintiff would not be asserting a wage-loss claim. *Id.,* Exhibit "G".

The parties submitted a Joint Proposed Discovery Plan and Scheduling Order (Dkt. #8) on August 3, 2012, which the court approved in a Order (Dkt. #9). The court approved discovery plan and scheduling order contained a provision for an independent medical examination in Paragraph K. It gave Wal-Mart the opportunity to conduct an independent medical examination under one of two

circumstances: first, if it was discovered that Plaintiff was still undergoing medical treatment for injuries alleged from this incident, or second, if Plaintiff claimed to have residual medical issues requiring additional medical treatment. Order (Dkt. #9), ¶K. If neither of two circumstances existed, Plaintiff reserved the right to object to an IME. *Id*.

Plaintiff served Wal-Mart with answers to interrogatories September 26, 2012. The Plaintiff verified her answers under penalty of perjury. Motion (Dkt # 56) Exhibit "P". Interrogatory No. 10 asked her to list every injury, symptom, or ailment she claimed was a result of the accident. Plaintiff responded: "I injured my right knee and had to have surgery. It still gives me problems from time to time. I also hurt my back and neck, but they seem better." Interrogatory No. 12 asked Plaintiff to identify all healthcare providers or facilities from which she had received treatment *or consulted* since the date of the incident. Plaintiff's answer did not disclose that she consulted with either Dr. Selznick or Dr. Miciano. At the time she signed these verified answers to interrogatories, she had received three separate independent medical examinations. Interrogatory No. 14 specifically asked if Plaintiff claimed to have any permanent injury as a result of the incident at the Wal-Mart store. Plaintiff objected on the grounds the interrogatory called for a medical opinion, but without waiving answered "I don't believe my knee will ever be the same." Interrogatory No. 15 asked the Plaintiff whether she was alleging that she would need any future treatment for any injury she alleged occurred as a result of the incident at the Wal-Mart store, and if so, requested information about the diagnosis and medical reason for future treatment, the nature of the future treatment(s), the cost of future treatment(s), and the name of the doctor or healthcare provider who informed Plaintiff that future treatment would be necessary. Plaintiff responded to "see" her Answer to Interrogatory No. 14. Similarly, Plaintiff was asked to itemize all expenses claimed as a result of the incident in Interrogatory No. 16. Plaintiff's answer referred Wal-Mart to her witness list and document disclosures, and contained the same chart disclosing the names of the healthcare providers and amounts of expenses incurred totaling $42,290.34 provided with her initial disclosures.

Plaintiff's deposition was taken on October 4, 2012. During her deposition, Plaintiff was asked about the current status of her right knee and whether she was still treating. She indicated that she was done seeing Dr. Tingey. Plaintiff's Reply (Dkt. #60) Exhibit "4", Deposition of Kayleen Shakespeare,

p. 94. Counsel for Wal-Mart asked the Plaintiff if she was following up with her primary physician, Dr. Ram, and responded that she had recently seen Dr. Ram. *Id.* Plaintiff was specifically asked what Dr. Ram said about her knee. Plaintiff responded that he prescribed Percocet telling her to take it as needed, and to ice it and rest. *Id.* She was then asked how often she needed to use the Percocet and responded she took it "if I do a lot" and sometimes when she slept. *Id.*, p. 95. She testified she took Percocet a couple of times a month. *Id.* She was asked if she agreed that as far as her knee was concerned, that she had pain maybe two days per month and agreed stating "depending on what I do." *Id.* She did not disclose that she had already been seen and independently evaluated on three separate occasions by Drs. Selznick and Miciano for any problems related to her knee.

Under all of these circumstances, the court appreciates that Wal-Mart was understandably surprised with Plaintiff's February 21, 2013, expert disclosures reflecting examinations by two previously undisclosed doctors had been conducted as early as August 5, 2012. However, counsel for Wal-Mart reasonably offered to stipulate to an extension of the expert witness deadline so it could conduct an IME and retain its own expert to remedy Plaintiff's failure to disclose her consultations with both doctors and information about recommendations for future surgery, opinions of permanent medical impairment, and future medical expenses. *See* February 27, 2013, letter attached as Exhibit "K" to Wal-Mart's Motion. The letter cited decisions in this district in which Wal-Mart had successfully obtained orders excluding untimely disclosed future medical damages and evidence of future surgery. However, to avoid motion practice, Wal-Mart proposed that it be permitted to retain an affirmative expert for its case in chief, and that Plaintiff be offered an extension to provide a rebuttal expert. *Id.* The letter confirmed counsel for Wal-Mart's understanding based on earlier discussions that Plaintiff agreed Wal-Mart could conduct an IME. *Id.*

Counsel for Plaintiff responded in a letter dated March 1, 2013, indicating that he had agreed to allow Wal-Mart to retain a medical expert for the sole purpose of rebutting Dr. Selznick's and Dr. Miciano's future medical care opinions, and that he was agreeable to allow this expert to conduct an IME for this "sole purpose." *Id.* Exhibit "M". However, counsel indicated that he would not agree to stipulate to allowing Wal-Mart to retain a medical expert to address issues in its case in chief. The letter cited cases holding that if the purpose of expert testimony is to contradict expected and

9

anticipated portions of the opposing party's case in chief the witness is not a rebuttal expert. Counsel for Plaintiff took the position that because Wal-Mart had not yet designated an expert in its case in chief, it was precluded from doing so, and limited to rebuttal experts. Because Wal-Mart would not agree to a limited IME or that it had lost the opportunity to designate experts for its case in chief counsel for Plaintiff indicated he would not agree to allow Wal-Mart to schedule an IME "since you expressly stated that this evaluation will address all aspects of my client's damages claim." *Id.*

The court finds Plaintiff's arguments too clever by half. In written correspondence, initial disclosures, five supplemental disclosures, and answers to interrogatories, Plaintiff steadfastly claimed that she had disclosed all of her medical providers and medical treatment for injuries she attributed to this accident. At her deposition on October 4, 2012, she testified that once or twice a month her knee bothered her and she took Percocet for it. In light of Plaintiff's prior representations in letters, initial disclosures, supplemental disclosures, formal discovery responses, and deposition testimony, Wal-Mart was sandbagged when Plaintiff disclosed opinions about the need for future knee surgery and future medical expenses exceeding $228,000 on the last day to disclose experts. The court finds that Plaintiff's failure to timely disclose her consultations with Drs. Selznick and Miciano was neither substantially justified nor harmless. Until February 21, 2013, Wal-Mart relied on Plaintiff's representations that she was claiming medical damages of approximately $42,000. Wal-Mart made the decision not to retain a medical expert or request an IME based on repeated representations that these were the extent of her damages. Wal-Mart was not on notice until February 21, 2013, of the potential for future medical damages or surgery. What Plaintiff had disclosed up until that point was that she occasionally had problems with her knee and occasionally visited her treating physician, Dr. Ram, who prescribed pain medication she took once or twice a month.

The court finds Plaintiff's arguments that the information about her future surgery and medical damages were not reasonably available until February 21, 2013, specious. The intake form for Dr. Miciano indicates that counsel for Plaintiff referred the Plaintiff to Dr. Miciano for an independent medical examination, life care plan, and permanent medical impairment report on August 1, 2012. Medical experts are expensive. The court does not believe counsel for Plaintiff sent his client to two retained experts, one of whom was specifically asked to prepare a life care plan and assess permanent

10

1   impairment, without the expectation they would opine Plaintiff had a permanent impairment and would

2   need future care and incur future medical expenses. Under all of these circumstances, the court

3   concludes that counsel for Plaintiff engaged in a calculated strategy to deprive Wal-Mart of an

4   opportunity to retain its own experts and conduct an IME which the parties stipulated to if Plaintiff

5   claimed to have residual medical issues requiring additional medical treatment.

6        Plaintiff was not required to serve a Rule 26(b)(2)(a) report until the expert disclosure

7   deadline. However, the expert disclosure deadline did not excuse Plaintiff from her other discovery

8   disclosure obligations. Plaintiff provided incomplete, erroneous and misleading supplemental

9   disclosures and discovery responses which she did not correct in a timely manner. The Plaintiff's

10  failure to disclose even the fact that she was consulting with retained experts whose reports she would

11  produce on the disclosure deadline mislead Wal-Mart to believe this was a $42,000 damages case, with

12  Plaintiff occasionally seeing her primary treating physician for knee pain she experienced once or twice

13  a month.

14       On the record presented in the moving and responsive papers, the court finds that Plaintiff's

15  discovery disclosures and non-disclosures are at best, materially misleading, and at worst, patently

16  false. Plaintiff's repeated failures to timely disclose was compounded by counsel for Plaintiff's failure

17  to remedy the late disclosures by agreeing to Wal-Mart's suggestion of a stipulation to allow it to retain

18  experts and conduct an IME. Under the circumstances, Wal-Mart's offer to stipulate was a reasonable,

19  even generous, attempt to remedy the unfair surprise Plaintiff's late disclosures caused.

20       A trial is supposed to be a search for the truth. The federal discovery rules and cases construing

21  them are designed to eliminate trial by ambush, and allow the parties to evaluate the merits of their

22  respective claims and defenses. What counsel for Plaintiff did here is indefensible. It will not be

23  condoned by this court. The motion is granted.

24  **IT IS ORDERED**:

25  1.   Wal-Mart's Motion to Exclude All Evidence Regarding Plaintiff Kayleen Shakespear's

26       Future Surgery, Permanent Medical Impairment, and Future Medical Expenses Pursuant

27       to FRCP 37(c)(1) and FRCP 37(b)(2) [Emergency Motion] (Dkt. #56) is **GRANTED**.

28  ///

11

2.    Plaintiff shall not be permitted to use as evidence at trial, at any hearing, or any motion,
      the testimony or opinions of Drs. Selznick and Miciano.

Dated this 8th day of July, 2013.

Peggy A. Leen
United States Magistrate Judge